## ASHLEY and others v. CRAMER.

1. In 1799, Pierre Chouteau petitioned the Lt. Gov of Upper Louisiana to grant him 30,000 arpents of land on the Missouri river, 60 miles above the mouth of the Osage, so as to include the river Lamine, and some salt springs. De Lassus, the Lt. Gov. granted the petition on the 20th Oct. 1799, and directed that the surveyor general should survey the land when Chouteau desired it, reserving the right of the Intendant General to confirm the title. Held : That this concession of the Lt. Gov. was a permission to Chouteau to appropriate the said land, and could not effect a severance of the land specified, from the King's domain, until an actual survey was made, as the survey alone appropriates land. This concession or grant, without any survey under the Spanish authorities, is not such a grant as is contemplated by our act regulating the action of ejectment.

2. The action of the board of commissioners, under the act of congress of July 9th, 1832, recommending this claim for confirmation, is not such "a confirmation made under the laws of the United States," as is contemplated by the statute of the State regulating the action of Ejectment. That board had no power to confirm any claim whatever. The action of the board, however, upon this claim, comes within the meaning of the 7th section of the act concerning evidence.

3. The plaintiffs, to bring their claim within the provisions of the act of congress of July 4, 1836, confirming the proceedings of the board of commissioners, offered in evidence extracts from the minutes of the board, containing their proceedings on this claim in 1833, certified by the recorder of land titles to be truly transcribed from the minutes of the board, and on file and of record in his office. Held, that as this evidence did not show under what power the commissioners acted, or whether this was one of those decisions reported to the general land office, the proof was of too loose and indefinite a character to raise even a presumption in favor of the claim of the plaintiffs, and it was therefore properly considered by the circuit court as insufficient to make out a confirmation under the laws of the United States.

4. The act of congress of July 4, 1836, is a legislative grant, and parts with all the interest of the United States in the confirmed claims. This legislative grant or confirmation is equivalent to a patent, and requires no further action on the part of the United States to perfect the title. The entire and absolute property passes from the general government and vests in the confirmees, by virtue of the act.

5. The act of July 4, 1836, makes no provision for issuing any patent, or other evidence of title, to the claimants under that act, and there being no law of the general government authorising the issuing of such patents, the patents issued to claimants under said act are void.

Error from the Cooper Circuit Court.

*Todd & Adams for Plaintiffs.*

1st. That the court erred in rejecting the original grant as incompetent evidence to go to the jury.

2d. The notice of claim to the land mentioned in the concession, and the proceedings had before the board of commissioners, commencing with the notice of claim and ending with a confirmation of the claim, was competent proof to go to the jury, and the court erred in rejecting it. 1 Missouri R. 777; 4 M. R. 450; act of congress " for the final adjustment of private land claims," approved 2d July, 1832; the supplementary act, approved 2d March, 1833; act of 4th July, 1836. See also the several acts of this State concerning evidence.

3d. The certified copy of survey by the U. S. surveyor, of the land in the concession, to Piere Chouteau, was competent proof, taken in connection with the grant, and the confirmation by the board of commissioners.

4th. The grant—confirmation by the board of commissioners—the survey and the act of congress of 4th July—'36, taken in connection, were competent proof, and the court erred in rejecting them.

5th. The patent issued by the U. S. was competent proof and sufficient to authorise a recovery. 13 Peters' R. 516; ib. 450–6; Cowen's R. 282–3; 10 J. R. 25; 12 J. R. 81.

6th. If any part of the evidence offered was competent to go to the jury, the court erred in refusing to grant a new trial.

*Leonard & Hayden for Defendants.*

1st. The Spanish concession is, neither, First a legal title to a specific piece of land; nor, Second, Such a title as, un-

AUGUST TERM, der our statute, will support an action of Ejectment. Rev.
1841. Stat. Mo. " Ejectment," sec. 2d.

Ashley
v.
Cramer.

2d. The confirmation of November, 1833, even if connected with the survey given in evidence, (and of such connection there was no proof,) is neither, First, a legal title; nor, Second, Such an equitable right as under our statute will support an action of Ejectment. Rev. Stat. Mo. " Ejectment," sec. 2d.

3d. The patent is void, because issued without any authority of law. Act of congress of 9th July, 1832; U. S. Land Laws, 1 vol. 505; act of congress of 2d March, 1833; U. S. Land Laws, 1 vol. 518; act of congress of 4th July, 1836; U. S. Land Laws, 1 vol. 557; Att. Genl. opinion Aug. 8th, '38; U. S. Land Laws, 2d vol. 1042; Polk's Lessee v. Windle, et al. 3 Peters' Con. U. S. R. 292; Doc. ex dem., Patterson v. Winn, 11 Wheat. 380, 6 Con. R. 357; Jackson v. Lawton, 10 J. R. 26.

4th. Although the act of the 4th of July, 1836, be a statute grant, yet there was no evidence in the cause showing that this claim was one of those embraced by that statute; acts of congress of 9th July, '32; 2d March '33; and 4th July, '36; 1 vol. U. S. Land Laws, 505, 518, 557; Lucas v. Strother, 12 Peters' U. S. Rep. 410.

*Opinion of the Court by Napton, Judge.*

This was an action of ejectment brought by plaintiffs to recover a tract of land in Cooper county. Upon the trial, the plaintiff submitted a series of title papers, on each of which they separately relied, and which were successively rejected by the court. The plaintiff then relied upon the whole conjunctively, and the court considered them insufficient evidence of title. A non-suit was submitted to, and a motion made to set the same aside, which was overruled by the court. The following was the evidence:

1st. A certified copy of a concession to Piere Chouteau, upon an application or petition to the Lt. Governor. The petition of Chouteau sets forth his desire that the Lt. Gov.

would grant him 30,000 arpents of land on the Missouri river, 60 miles above the mouth of the Osage, so as to include the river Lamine, and some salt springs which he designed to work. De Lassus on the 20th Oct. 1799, grants the petition of Mr. Chouteau, and directs that the surveyor, Soulard, should survey the land when Mr. Chouteau desired it, reserving, however, as usual, the right of the Intendent General to confirm the title.

2d. A copy of the proceedings of the board of commissioners in 1800, containing notice of the claim contained in the concession, copy of the concession, and a document purporting to be an assent on the part of the Osage Indians to the occupancy of the land by Mr. Chouteau. Also the proceedings of the board in 1833, confirming the claim. The following is the certificate of the recorder of land titles:

"Recorder's Office St. Louis, Missouri, June 17, 1839. I certify the first part of the foregoing, (being the notice to the recorder of land claims,) to be truly transcribed from Book D, page 152, the 2d and 3d parts, (being the assent of the Osage Indians, and the petition and grant,) to be truly copied from the original documents on file—and the balance to be truly transcribed from the minutes of the commissioners—all on file and of record in this office.

F. R. CONWAY, U. S. Recorder of D. & C."

3d. The act of congress of 4th July 1836, confirming certain claims to land, and a survey made subsequent to said act.

4th. A patent for the land confirmed by said act of 4th July, 1836.

Evidence was given of the conveyance from Chouteau to Ashley, the death of Ashley, and then, heirship of the present plaintiffs.

This evidence the circuit court rejected severally and collectively, as insufficient to maintain the action.

I will consider the evidence in detail, as it was presented to the circuit court.

The concession, or grant of De Lassus in 1799, was a permission to Chouteau to appropriate 30,000 arpens of land on the Missouri river, 60 miles above the mouth of the

AUGUST TERM, 1841.

Ashley
v.
Cramer.

In 1799, P. Chouteau petitioned the lt. gov. of Upper Louisiana to grant him 30,000 arpents of land on the Mo. river, 60 miles above the mouth of the Osage, so as to include the river Lamine and some salt springs. De Lassus, the lt. gov. granted the petition on the 20 Oct. 1799, and directed that the surveyor general should survey the land when Chouteau desired it, reser-

AUGUST TERM, 1841.

Ashley
v.
Cramer.

*Held, that this concession of the lt. gov. was a permission to Chouteau to appropriate the said land, and could not effect a severance of the land specified from the King's domain, until an actual survey was made, as the survey alone appropriates land. This concession, or grant, without any survey under the Spanish authorities, is not such a grant as is contemplated by our act regulating the action of Ejectment.*

Osage, with a warrant authorising the surveyor to have the same surveyed whenever it suited Mr. Chouteau's pleasure.

This permission, or warrant of survey, did not purport to be a grant, and could not be construed to effect a severance of the land specified, from the King's domain, until an actual survey was made. The survey alone appropriates the land. Taylor & Ourly v. Brown, 5 Cranch, 234. This paper, therefore, was not such a grant as is contemplated by our act regulating the action of ejectment, and consequently did not of itself make out the plaintiff's right of recovery.

The proceedings of the board of commissioners in 1833, by which the claim of Chouteau was recommended for confirmation, constitutes the second step taken in the court below, and involves the question whether the action of this board was such as is contemplated by our statute, " a confirmation under the laws of the United States," sufficient to maintain ejectment. The act of July 9th, 1832, for the final adjustment of private land claims in Missouri, makes it the duty of the recorder and the two commissioners joined with him, to examine all the unconfirmed claims to land in that State, which had been legally filed ; and to class the same, so as to show, first, what claims in their opinion would have been in fact confirmed, according to the laws, usages and customs of the Spanish government, had the same continued ; and secondly, what claims, in their opinion, are destitute of merit, in law or equity, under such usages and customs.

The recorder and commissioners were further directed, at the commencement of each session of congress, to lay before the commissioner of the general land office a report of the claims so classed, stating the date and quantity of each, whether there be any, and what conflicting claims, and the evidence upon which each depended, to be laid before congress for their final decision upon the claims contained in such first class. By the act of March 2, 1833, two years additional time was allowed the recorder to take testimony.

That the action of this board of commissioners in 1833, on the claim of Chouteau, was such a confirmation as comes

within the meaning of our act concerning evidence, (Rev. C. 1835, p. 251, s. 7,) I entertain no doubt. In the case of George v. Murphy, (1 Mo. Rep. 770,) the court gave this construction to a confirmation made by the recorder under the act of 2d August, 1813. But the act of our legislature, regulating the action of ejectment, authorises that action to be maintained on a confirmation made under the laws of the United States. Is this such a confirmation? It is clear from the terms of the act, that this board erected under the act of July 9, 1832, had no power to confirm any claim whatever. Their duty was merely to divide the unconfirmed claims into two classes, the one embracing such as in their estimation appeared equitable, and the other such as had no merit in law or equity, and to report the first class of claims to the commissioner of the general land office for the subsequent action of congress. Had the board confirmed any claims under this act, their action would have been entirely beyond their powers, and of course a mere nullity.

But they did not undertake to confirm. The extract from the minutes of the board, given as evidence, shows a mere expression of opinion that the claim should be confirmed. This was no *confirmation*, therefore, under any law of the United States, and of itself could not make out the plaintiff's title.

The act of July 4, 1836, was then read in evidence to show a confirmation under the laws of the United States, That act declares " that the decisions in favor of land claimants, made by the recorder of land titles in the State of Missouri, and the two commissioners associated with him by virtue of an act entitled ' an act for the adjustment of private land claims in Missouri,' approved July 9th, 1832, and an act supplemental thereto, approved March 2d, 1833, as entered in the transcript of decisions transmitted by the said recorder and commissioners, to the commissioners of the general land office, and by him laid before congress at the two last and present sessions, be and the same are hereby confirmed, saving and reserving, however, to all adverse claimants, the right to assert the validity of their claims in a court or courts of justice." The act proceeds to make ex-

AUGUST TERM, 1841.

Ashley v. Cramer.

The act of July 4, 1836, makes no provision for issuing any patent, or other evidence of title, to the claimants under that act, and there being no law of the general government authorising the issuing of such patents, the patents issued to claimants under said act are void.

Ashley
v.
Cramer.

The plaintiffs, to bring their claim within the provisions of the act of congress of July 4, 1836, confirming the proceedings of the board of commissioners, offered in evidence extracts from the minutes of the board, containing their proceedings on this claim in 1833, certified by the recorder of land titles to be truly transcribed from the minutes of the board, and on file of record in his office. Held, that as this evidence did not show under what power the commissioners acted, or whether this was one of those decisions reported to the general land office, the proof was of too loose and indefinite a character to raise even a presumption in favor of the claim of the plaintiffs, and it was therefore properly

ceptions of certain claims therein enumerated, of which the present claim is not one.

To bring the present claim within the provisions of this act, it must appear to be one of those claims reported favorably on by the recorder and commissioners, who acted by virtue of the two acts above enumerated, and entered in the transcript of decisions transmitted by the said recorder and commissioners, to the commissioner of the general land office, and by him laid before congress. For this purpose the plaintiffs presented extracts from the minutes of the commissioners, containing their proceedings on this claim in 1833, certified by the recorder of land titles to be truly transcribed from the minutes of the board, and on file and of record in his office. The evidence was undoubtedly good as far as it went, but there is nothing to show under what power these commissioners acted, or whether it was one of those decisions reported to the commissioners of the general land office. Where duties are enjoined by law on public officers, the presumption is certainly that those duties have been performed, and the very strictest proof would not, and should not be required in cases like the present. But a prima facia case, at least, must be made out. No presumption legally arises, that this board had no subsequent action upon the claim after the date of the proceedings copied; and it should, at all events, have appeared from the certificate of the recorder or otherwise, under what law of the United States or authority, this board acted. The proof is of too loose and indefinite a character to raise even a presumption in favor of the plaintiffs, and was therefore properly considered by the circuit court as insufficient to make out a confirmation under the laws of the United States.

The last little paper we are called on to consider, is that patent offered by the plaintiffs, under the seal of the general land office. The act of 4th July, 1836, is a legislative grant, it parts with all the interest of the United States in the confirmed claims.

This legislative grant or confirmation has been held equivalent to a patent, and requires no further action on the part of the federal government to perfect the title. The

entire and absolute property passes from the grantors and vests in the grantees by virtue of the act, as much so as if a patent had issued. Such has been the construction given to similar acts by this court, and the supreme court of the United States, in numerous and repeated cases. Vapur v. Benton, Mo. Rep.; Tatter v. Primm, Mo. Rep.; Strother v. Lucas, Peters' Rep. The wisdom or propriety of these decisions, it would be useless now to discuss. Whether under this adjudicated opinion of these legislative grants, congress could provide further and additional *evidences* of title, may very well be questioned. The question did arise under the act of 13th June, 1812, and 26th April, 1824, in the case of Gurno v. Administrator of Janis, and a majority of the court in that case held, that congress might provide the means of furnishing evidence of title to the claimants under those acts. The matter was much discussed, when that case came up a second time in this court, and only one judge expressed any opinion on that point. Gurno v. Janis' Administrator, (6 Mo. R. 330.)

It is not necessary to decide the question in this case. Congress made no such provision in the act of 4th July, 1836, or subsequently, that I am apprised of, for issuing any patent or other evidences of title to the claimants under that act. Nor has any authority, under any general law of the United States, been shown for issuing this patent. Without such authority, it is no better than blank parchment. McConnell's lessee v. Wilcox, 13 Peters.

The circuit court did not, for the reasons above mentioned, err either in rejecting the several evidences of title offered by the plaintiffs, separately, or conjunctively, and its judgment is affirmed.

*Tompkins, Judge.*

I concur in affirming the judgment of the circuit court, because the recorder's certificate does not show that this claim was one acted on under the laws of 1832 & 33. I am not well informed as to the validity or invalidity of the pa-

*Margin notes:*

AUGUST TERM, 1841.

Ashley v. Cramer.

considered by the circuit court as insufficient to make out a confirmation under the laws of the U. States.

The act of congress of July 4, 1836, is a legislative grant, & parts with all the interest of the United States in the confirmed claims. This legislative grant or confirmation is equivalent to a patent, and requires no further action on the part of the U. States to perfect the title. The entire and absolute property passes from the general government and vests in the confirmee, by virtue of the act.

The action of the board of commissioners, under the act of congress of July 9, 1832, recommending this claim for confirmation, is not such "a confirmation made under the laws of

tent, but am decidedly of opinion that there has been no title shown previous to the patent, on which the action of eject-ment can be sustained under our statute.

Ashley
v.
Cramer.
the United
States," as is
contemplated

*Scott, Judge.*

I concur in the opinion of Judge Napton.

by the statute of the State regulat'g the action of Ejectment. That board had no power to confirm any claim whatever. The action of the board, however, upon this claim, comes within the meaning of the 7th sec. of the act concerning evidence.